UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LACAL LUCKY WILSON                                    CIVIL ACTION

VERSUS                                               NO.  10-161

N. BURL CAIN ET AL.                                  SECTION "I"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  It has now been reassigned to me.  Record Doc. No. 23.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.   STATE COURT PROCEDURAL BACKGROUND

The petitioner, Lacal Lucky Wilson, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  Wilson was charged on January 6, 2004, in St. Tammany Parish by bill of information with simple burglary.[3]  He pled not guilty and, after a stay of the criminal proceedings while a mental competency examination and hearing were conducted,[4] on March 15, 2005, he was found guilty as charged after a jury trial.[5]  His various post-trial motions, including to appoint conflict free counsel, for a new trial and for post-verdict judgment of acquittal, were all denied.[6]  On November 10, 2005, he was adjudicated a fourth felony offender under the Louisiana Habitual Offender Law, La. Rev. Stat. § 15:529.1, and the state trial court sentenced him to life in prison.[7]

The Louisiana First Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

---

[2]Rec. Doc. No. 1 (Petition at p. 1).

[3]St. Rec. Vol. 2 of 5, Bill of Information, 1/6/04.

[4]St. Rec. Vol. 2 of 5 at p. 5, Trial Court Minutes, 3/4/04.

[5]St. Rec. Vol. 2 of 5 at pp. 91-92, Jury Verdict Form 3/15/05.

[6]St. Rec. Vol. 2 of 5, Trial Court Minutes at pp. 24-25, 6/29/05; St. Rec. Vol. 3 of 5 at pp. 300-03, Trial Court Order Denying Post-Trial Motions, 11/9/05.

[7]St. Rec. Vol. 3 of 5 at pp. 307-08, Written Reasons for Judgment, 11/28/05; St. Rec. Vol. 2 of 5 at pp. 137-38, Multiple Offender Bill of Information, 5/23/05; St. Rec. Vol. 4 of 5 at pp. 629-30, Sentencing Transcript, 11/10/05.

During the evening hours of December 2, 2003, Drake A. Clarke, the victim, was socializing at his workplace (Clarke's Design Service), which consisted of a two-story building located on Third Street in Slidell, Louisiana. Also present in the building were the victim's wife, Sandra Clarke, her friend, Shannon, the victim's brother, Dale, and his friend Niles J. Guerra. As the individuals sat in the open area located on the second level of the building, someone heard a noise through an open window. The victim walked downstairs and looked down the hallway, but did not observe anything unusual. After the brief inspection, the victim returned to the second level of the building. Approximately five minutes later, they heard a noise again. The victim peered through the open window and observed an African-American male intruder as he sat in the victim's vehicle rummaging through the victim's jacket pockets. The victim's vehicle was located in the building's parking lot.

The victim, his brother, and Guerra immediately ran downstairs to confront the intruder. The others contacted the police. According to the testimony of the victim and Guerra, the intruder was walking within approximately five feet of the victim's vehicle when the victim, his brother, and Guerra entered the parking lot. When questioned, the intruder conveyed that he did not have anything. Guerra told the intruder to stop, but he walked swiftly as he exited the parking lot. As the intruder walked across the street, Guerra entered his vehicle and began to follow him. Officers of the Slidell Police Department began arriving a few minutes after the 10:46 p.m. dispatch reporting a burglary in process. After being pointed out by Guerra, the defendant was arrested and brought back to the scene (two to three blocks away from the site of the arrest), where he was again identified as the intruder.

(footnotes omitted) State v. Wilson, No. 2006 KA 0652, 2006 WL 3107814, *1 (La. App. 1st Cir. 2006); State Record Volume 5 of 5, Louisiana First Circuit Opinion, 2006-KA-0652, at pp. 2 - 3, November 3, 2006.

Wilson filed a timely appeal, and his conviction, sentence and habitual offender adjudication were affirmed by the Louisiana First Circuit Court of Appeal on November 3, 2006.[8]

Wilson's conviction became final thirty (30) days later, on December 3, 2006, or the next business day, Monday, December 4, 2006, because he did not seek reconsideration of his sentence, file a notice of appeal or otherwise seek review in the Louisiana Supreme Court.[9] Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003)) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); Wilson v. Cain, 564 F.3d 702 (5th Cir. 2009) (timely filed motion for rehearing must be considered in determining the finality of a conviction); Burton v. Stewart, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)); Cousin v. Lensing, 310 F.3d 843, 845 (5th Cir. 2002) (petitioner's guilty pleas became final at the end of the period for filing a notice of appeal under La. Code Crim. P. art. 914); La. Code Crim. P. art. 13 (weekends

---

[8]State v. Wilson, No. 2006 KA 0652, 2006 WL 3107814 (La. App. 1st Cir. 2006).

[9]Article 914 was amended by La. Acts 2003, No. 949, § 1 to provide 30 days for filing a notice of appeal.

and holidays are not included in the calculation of period when it would be the last day of the period or when the period is less than seven days).[10]  Wilson did not seek rehearing of the Louisiana Fifth Circuit's order affirming the trial court or review in the Louisiana Supreme Court.  Instead, he commenced a series of filings in the state trial court.

On March 23, 2006, while his direct appeal to the First Circuit was still pending, he filed a pleading entitled "habeas corpus" in the state trial court alleging ineffective assistance of counsel. It was deemed a motion and summarily denied without reasons by the trial court on April 30, 2006, apparently because his direct appeal was then pending.[11]

After his conviction was affirmed by the Louisiana First Circuit, Wilson commenced a stream of prolix and often repetitive and redundant pro se filings in the state trial court. On several occasions in 2006 and 2007, he asked for copies of transcripts, which had already been provided to his counsel for appeal purposes, and of police reports, minute entries, "DA files" and other records. His state trial court filings in 2007 included an application for post-conviction relief, in which he made various ineffective assistance of counsel arguments, which Wilson signed on January 11, 2007 and filed on January 16, 2007, and the trial court dismissed under La. Code Crim. P. art.

[10]See also La. Rev. Stat. Ann. § 1:55, establishing weekends and other days as legal holidays.

[11]St. Rec. Vol. 5 of 5, "Habeas Corpus," 3/23/06.

930.3[12] on January 25, 2007; a motion for reconsideration of sentence dated May 1, 2007, which was summarily denied by the state trial court two days later; a "motion for incompetent hearing," filed on May 7, 2007 and denied without reasons on May 10, 2007; a "motion for insanity hearing" filed on May 8, 2007 and denied without reasons a week later; a "motion to vacate sentence" dated July 27, 2007, that was denied without reasons on August 1, 2007; a "motion to correct illegal sentence" dated August 3, 2007, that was denied without reasons the next day; a "motion for rehearing" filed on August 9, 2007, opposed in writing by the State on grounds that it was repetitive under La. Code Crim. P. art. 930.4,[13] and summarily denied by the state trial court by order dated September 4, 2007; an application for post-conviction relief received by the court on August 24, 2007, but returned to Wilson by letter from the clerk of the trial court for failure to include the sentencing minutes and an affidavit; a "motion for insanity hearing" filed on October 15, 2007 and summarily denied five days later; and a motion to recuse

---

[12]Article 930.3 provides generally that sentencing errors must be raised on direct appeal and are not proper grounds for post-conviction relief. See Melinie v. State, 665 So.2d 1172 (La. 1996); State ex rel. Glover v. State, 660 So.2d 1189, 1194, 1196-98 (La. 1995).

[13]Article 930.4(A) bars further review by the state courts on an application for post-conviction relief of a claim that was previously raised and addressed on appeal, while Article 930.4(C) bars review on application for post-conviction relief of a claim that could have been raised on direct appeal but was not. "[T]he bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994). On the other hand, the Article 930.4(C) bar has been viewed as an independent and adequate state law procedural bar to review of an improperly raised post-conviction claim. Id.

the state trial court judge filed on November 15, 2007, which was denied in an order with full reasons on December 3, 2007.[14]

The Louisiana Fifth Circuit Court of Appeal denied without reasons Wilson's application for supervisory writs concerning some or all of these rulings in an order issued December 27, 2007 and filed on January 2, 2008.[15]

Thereafter, in 2008, Wilson launched another stream of similar pro se pleadings in the state trial court. On April 10, 2008, he filed a "motion for new trial," that was denied five days later without written reasons. On April 14, 2008, he filed a "motion to quash" asserting various arguments, including ineffective assistance of counsel, that was denied without reasons the next day. On May 5, 2008, the state trial court received from Wilson another application for post-conviction relief, but returned it to him for failure to attach sentencing documents. On later consideration, the state trial court dismissed the application for post-conviction relief by order dated June 4, 2008, as repetitive under La. Code Crim P. art. 930.4. On June 13, 2008, Wilson filed a "motion to show probable cause," which was summarily denied three days later. On June 26, 2008, he filed yet another "motion for insanity hearing," which was denied on July 1, 2008. On July 10,

---

[14]All of these pro se submissions and related court orders, many of which are simply hand-written on the submissions by the state trial judge, described in this paragraph can be found in St. Rec. Vol. 5 of 5.

[15]St. Rec. Vol. 5 of 5, 1st Cir. Case No. 2007-KW-2089, 12/27/07.

2008, he filed yet another "motion to correct illegal sentence," which was summarily denied four days later.[16]

On August 4, 2008, the Louisiana Court of Appeal for the First Circuit granted Wilson an extension of time through and including October 1, 2008 within which "to file a writ application seeking review of the denial of his application for post-conviction relief."[17]  The state court of appeal subsequently denied his application for supervisory writs without reasons in an order filed on February 3, 2009.[18]  The Louisiana Supreme Court denied his subsequent writ application to that court in an order dated December 18, 2009 and filed on December 21, 2009.[19]

II.    FEDERAL HABEAS PETITION

On January 27, 2010, the clerk of this court filed Wilson's petition for federal habeas corpus relief.[20]  In his original petition, Wilson asserted a single claim with three components, that he received ineffective assistance of counsel in that his attorney failed

---

[16]All of these pro se submissions and related court orders, many of which are simply hand-written on Wilson's submissions by the state trial judge, described in this paragraph can be found in St. Rec. Vol. 5 of 5.

[17]St. Rec. Vol. 5 of 5, Order, La. App. 1st Cir. Case No. 2008-KM-1536, 8/4/08.

[18]Id., Order, La. App. 1st Cir. Case No. 2008-KW-2034, 2/2/09.

[19]Id., Order, La. S. Ct. Case No. 2009-KH-0602, 12/18/09. This order represents the only action taken by the Louisiana Supreme Court in Wilson's case that appears in the state court record.

[20]Rec. Doc. No. 1.

to (a) file a pretrial motion to suppress a "suggestive show-up identification" of Wilson as the perpetrator, (b) challenge through cross-examination inconsistencies in the testimony of the State's witnesses concerning the perpetrator's description, and (c) raise Wilson's "long-term mental history of schizophrenia that renders him incompetent to understand the proceedings against him."[21]    The State filed an answer and a memorandum in opposition to the petition, arguing that, although Wilson had exhausted his ineffective assistance of counsel claims in the state courts, his federal petition was not timely filed and his ineffective assistance of counsel claim was both meritless and procedurally barred from review.[22]

On November 4, 2010, Wilson filed a motion to amend his petition to add additional claims, citing <u>Maleng v. Cook</u>, 490 U.S. 488 (1989).[23]    His amended pleadings, construed broadly, assert that his guilty plea in Case No. 193586-C, an old 1996 simple burglary conviction that was used as part of the multiple offender adjudication to enhance his sentence in the later burglary case underlying the instant proceeding, was unconstitutionally obtained, in that (a) the applicable state law two-year statute of limitations had expired, (b) he was incompetent to enter the guilty plea in 1996,

---

[21]<u>Id.</u> at ¶ 12(A) p. 4.

[22]Rec. Doc. Nos. 11 and 12.

[23]Record Doc. No. 22 at p. 1 of 41.

based upon an August 31, 1995 commitment to the state forensic facility, and (c) his

counsel was ineffective in permitting him to plead guilty to a defective bill of information

and in permitting use of that defective guilty plea in the habitual offender adjudication

in the instant case.[24] On December 8, 2010, I granted Wilson's motion and set a deadline

by which the State might file a supplemental opposition to the amended petition.[25] The

State complied, and filed its supplemental opposition memorandum on January 4, 2011,

arguing that the petition, as amended, remained untimely and that the claims asserted in

the amended pleadings were both unexhausted and meritless.[26]

III.    GENERAL STANDARDS OF REVIEW

        The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[27] and

applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198

(5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[24]Id. at pp. 1 and 2 of 41.

[25]Record Doc. No. 24.

[26]Record Doc. No. 25.

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

10

applies to Wilson's petition, which, for reasons discussed below, is deemed filed in this federal court on January 4, 2010.[28]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State argues that all of Wilson's claims are untimely and that the claims raised in his amended pleadings are unexhausted. For the reasons outlined below, however, I find that Wilson's petition was timely filed in this court and that I cannot determine with certainty from the state court record whether all or any of his claims are procedurally barred.  In addition, although it appears that all of Wilson's challenges to his 1996 guilty plea contained in his amended pleadings have not been exhausted through submission of those claims to the Louisiana Supreme Court, I find that their dismissal without prejudice and requiring exhaustion in the state

_____

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Wilson's petition was filed by the clerk of this court on January 27, 2010, when his motion for leave to proceed in forma pauperis was granted. Wilson's signature on his petition was dated January 4, 2010. Record Doc. No. 1 at p. 6. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing.

courts would be a vain and useless act, since all claims asserted in Wilson's pleadings, even as amended, are clearly invalid to support federal habeas relief and should be dismissed with prejudice for that reason, as permitted by 28 U.S.C. § 2254(b)(2).

## IV.   TIMELINESS

The State has argued that Wilson's petition is time-barred.  The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[29]  Duncan v. Walker, 533 U.S. 167, 179-80 (2001).  For the following reasons, I do not accept the State's timeliness defense.

Wilson's conviction was final on December 3, 2006, when he did not pursue review of the Louisiana First Circuit's order affirming his sentence and conviction in the Louisiana Supreme Court.  See Cousin, 310 F.3d at 845.  Thus, under a literal application

---

[29]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

12

of the statute, Wilson had one year from the date his conviction became final, or until December 3, 2007, to file his federal habeas corpus petition, which he did not do.  His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled, but only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at 418-19; Cousin, 310 F.3d at 848.

Wilson has suggested that his history of mental illness and his reliance for assistance on other inmates to make his filings constitute rare or exceptional

circumstances why the one-year period should be considered equitably tolled.[30]  The magistrate judge previously assigned to this case construed Wilson's argument in this regard as a request for equitable tolling and deferred ruling on the request to issuance of a final report and recommendation.[31]  I find that these grounds do <u>not</u> fit the restrictive boundaries of "exceptional circumstances" described in recent decisions.  <u>See</u> <u>Hardy v.</u> <u>Quarterman</u>, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); <u>United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>cert.</u> <u>denied</u>, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); <u>Fisher</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); <u>Cantu-Tzin</u>, 162 F.3d at 300 (State's alleged failure to appoint competent

---

[30]Record Doc. No. 15 (Motion in Opposition to State's Response at p. 2.)

[31]Record Doc. No. 16.

habeas counsel did not justify tolling); <u>Davis</u>, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).  I therefore conclude that equitable tolling does <u>not</u> apply in this case to make Wilson's federal habeas petition timely.

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.  <u>Flanagan</u>, 154 F.3d at 199 n.1.  The Supreme Court has clearly described this provision as a tolling statute.  <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period.  Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the

time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

16

In this case, the State has made a detailed timeliness calculation in which it concludes that Wilson allowed a total of 420 days to lapse between finality of his conviction and the mailbox rule submission date of his federal habeas petition to this court.[32]  Thus, the State argues that Wilson missed the AEDPA statute of limitations deadline (365 days from finality of his conviction) by 55 days.  For the following reasons, however, I cannot accept the State's calculation.

First, the State begins its count one day early, on Sunday, December 3, 2006, rather than on the next business day, Monday, December 4, 2006, as provided by state law.  Second, Wilson's state trial court application for post-conviction relief filed after his conviction was affirmed on direct appeal should be deemed filed under the applicable mailbox rule on January 11, 2007, the date he signed it, rather than on the in-court filing date five days later, as the State calculation provides.  Third, and most importantly, the State's calculation fails to include tolling credit for the various additional 30-day time periods provided to Wilson by state law during which he could have pursued the next step of appellate review under La. App. R. 4-3 and La. S. Ct. Rule X, § 5.  The Fifth Circuit has recognized that the AEDPA statute of limitations period remains tolled because a state post-conviction application remains "pending," even after lower court disposition, until the 30-day period for filing a writ application for further appellate

---

[32]Record Doc. No. 12 at pp. 4-7.

review expires.  Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70

(5th Cir. 2004); Melancon v. Kaylo, 259 F.3d 401, 404-06 (5th Cir. 2001).  When these

additional tolling time periods are applied to the State's calculation, it appears that

Wilson allowed only about 221 days of the AEDPA time period to lapse.

Accordingly, I find that Wilson's federal habeas corpus petition is not clearly

time-barred, and the State's defense in this regard should not be accepted.

V.    PROCEDURAL BAR/EXHAUSTION OF STATE REMEDIES

The State also argues that some or all of Wilson's claims are procedurally barred

from review in this court.  Generally, a federal court will not review a question of federal

law decided by a state court if the decision of that state court rests on a state ground that

is both independent of the federal claim and adequate to support that judgment.  Coleman

v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir.

1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S.

255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to

both substantive and procedural grounds and affects federal review of claims that are

raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in

a habeas petition unless the last state court to render a reasoned judgment in the case has

clearly and expressly indicated that its judgment is independent of federal law and rests

on a state procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.

Unfortunately, I cannot determine with certainty whether the last reasoned

decision of the state courts clearly relied on independent and adequate state law grounds

to deny relief.  None of the three Louisiana First Circuit dispositive orders or the single

Louisiana Supreme Court dispositive order clearly and unambiguously do so.  Some of

the state trial court orders cite La. Code Crim. P. art. 930.4 perfunctorily and generally

in denying some requests for relief, but without discussion of or citation to the particular

sub-section of the article being relied upon.  This is significant because, while La. Code

Crim. P. art. 930.4(C) is clearly an adequate and independent state law procedural ground

for denying review of an improperly raised post-conviction claim, "[t]he bar imposed by

article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the

merits." Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994) (emphasis added). Thus,

I cannot conclude that procedural bar precludes consideration of Wilson's claims.

In a similar defensive vein, the State concedes that Wilson exhausted his

ineffective assistance of counsel claims through the Louisiana Supreme Court,[33] but

argues that the additional claims asserted in the supplemental pleadings have not been

---

[33]Record Doc. No. 12 at p.8 (Memorandum in Opposition to Application for Habeas Corpus).

exhausted.[34] Thus, the State argues that the petition now presents "mixed" exhausted and unexhausted claims.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20) (emphasis added).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270, 275-78 (1971)) (emphasis added). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

---

[34]Record Doc. No. 25 at pp. 2-3 (Supplemental Memorandum in Opposition).

"A federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78).  "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." (emphasis added) Id. (citing Nobles, 127 F.3d at 420).  It is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the Louisiana Supreme Court.  Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a prisoner does not fairly present a claim to a state court if that court must read beyond a petition or brief, such as a lower court opinion, to find the claim).

To have exhausted his claims in state court, Wilson must have fairly presented the same claims and legal theories he urges in this federal court to the state courts through to the Louisiana Supreme Court in a procedurally proper manner. The record reflects that Wilson has not allowed the Louisiana Supreme Court to complete a full and proper review of all of his claims asserted in this case.

Thus, this petition could be dismissed without prejudice to require Wilson to exhaust available state court remedies as to all claims raised, unless he were to amend or resubmit the habeas petition to present only exhausted claims.  Pliler v. Ford, 542 U.S. 225, 233 (2004) (quoting Rose, 455 U.S. at 510); Whitehead, 157 F.3d at 387.  However, Wilson's failure to exhaust is only one defense raised to the petition.  The State has also

challenged the merits of Wilson's claims as baseless, and that defense is dispositive of his petition.

I find that dismissing the case without prejudice and requiring Wilson first to amend to dismiss his unexhausted claims or exhaust his claims in the state courts would be a vain and useless act, since it is clear that Wilson is <u>not</u> entitled to federal habeas corpus relief on the merits and his petition should be dismissed with prejudice. 28 U.S. C. § 2254(b)(2).

VI.   <u>MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied,</u> 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93; Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

(A)    SUPPLEMENTAL CLAIMS

The claims asserted in Wilson's supplemental and amended pleadings, Record Doc. No. 22, all relate to his guilty plea in Case No. 193586-C, an old 1996 simple burglary conviction that was used as part of the multiple offender adjudication to enhance his sentence in the later burglary case underlying the instant proceeding.  To whatever extent, if any, that his supplemental claims represent a direct challenge to his 1996 conviction, this court is without subject matter jurisdiction to consider them because Wilson is no longer in custody on that old conviction.

28 U.S.C. § 2241(d) "gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Maleng v. Cook, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis added); 28 U.S.C. § 2254(a).  Thus, to be eligible for federal habeas corpus relief, a petitioner must be "in custody" and must have exhausted his available state court remedies.  Dickerson v.

24

Louisiana, 816 F.2d 220, 224 (5th Cir. 1987).  The United States Supreme Court has interpreted this statutory language to require that the habeas petitioner be in custody at the time the petition is filed for the conviction or sentence under attack.  Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 400-401 (2001).

Wilson's petition is deemed filed in this court under the "mailbox rule" on January 4, 2010.  Although he was incarcerated at that time, I find that he was not in custody on the filing date based upon the 1996 guilty plea.  By January 4, 2010, and in fact before his arrest on the burglary charge that ultimately led to the 2005 conviction and life sentence he now challenges, Wilson had already completed the sentence he received as to the 1996 guilty plea.

Thus, Wilson is not currently in custody pursuant to, or for purposes of directly challenging, the 1996 burglary guilty plea.  This court, therefore, lacks subject matter jurisdiction to review his petition, insofar as it directly challenges the 1996 conviction.

The more likely basis for Wilson's current challenge to his 1996 guilty plea in this case is that his 1996 guilty plea was used to enhance to life in prison the sentence for the later burglary conviction for which he is currently in custody.

As the United States Supreme Court held in Lackawanna, when a habeas petitioner is no longer serving the sentences imposed pursuant to his old convictions, he cannot bring a federal habeas action directed solely at challenging those convictions.  However,

where his current Section 2254 petition can be (and has been) construed as asserting a challenge to the <u>sentence</u> he is currently serving, <u>as</u> <u>enhanced</u> by the allegedly invalid old convictions, he satisfies the "in custody" requirement for jurisdictional purposes. 534 U.S. at 401-02.  In <u>Lackawanna</u>, however, the Supreme Court also held that, although jurisdiction to consider such a claim exists, relief is generally <u>un</u>available to a state prisoner through a petition for a writ of habeas corpus when the prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody.  "[W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as <u>conclusively valid</u>. . . .  If that conviction is later used to enhance a criminal sentence, the defendant generally may <u>not</u> challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained."  <u>Id.</u> at 403-04 (citation omitted) (emphasis added).

In <u>Lackawanna</u>, the Supreme Court recognized a single exception to this rule relating to Sixth Amendment claims of failure to appoint counsel.  No such claim is made in this case, and I am unaware of any exception to the rule that would apply to the other kinds of claims that Wilson makes in this case. As explained by the Sixth Circuit in

26

Abdus-Samad v. Bell, 420 F.3d 614, 630 (6th Cir. 2005), a three-justice plurality of the Lackawanna Court speculated that other exceptions to this rule of federal habeas non-reviewability might exist in other circumstances, including (1) where a state court, without justification, has refused to rule on a properly presented constitutional claim, and (2) where a defendant subsequently obtains compelling evidence of his actual innocence. In Wilson's case, the state record does not indicate that any state court unjustifiably refused to address a properly asserted constitutional claim. There is no compelling indication of actual innocence.

Accordingly, this court may not revisit Wilson's prior conviction based upon his 1996 guilty plea, which is "regarded as conclusively valid."  Id. at 403.  Federal habeas relief is unavailable for Wilson's challenge of the use of this old conviction to enhance to life in prison the sentence he is currently serving.

(B)    INEFFECTIVE ASSISTANCE OF COUNSEL

Wilson asserts ineffective assistance of counsel claims in both his original and supplemental pleadings.  However, all of the instances of ineffective assistance allegations made by Wilson are without merit, so that even if the supplemental claims could be reviewed by this court, both they and the originally asserted ineffective assistance claims would have to be dismissed.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in  Strickland, 466 U.S. at 668, which was relief on by the state trial court.  In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough under Strickland,

however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" <u>Motley</u>, 18 F.3d at 1226 (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal v. Puckett</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." <u>Bell</u>, 535 U.S. at 697 (citing <u>Strickland</u>, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690. Federal courts have consistently recognized that tactical

decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

In this case, Wilson made three arguments in his original petition that his trial counsel was ineffective. His first argument is that his trial counsel failed to file a motion to suppress a "suggestive show-up identification" that he was the perpetrator of the subject automobile burglary. More specifically, Wilson argues that when "police quickly apprehended Wilson and returned him to the scene" he was subjected to a "suggestive identification" at the scene by two eyewitnesses. He argues that his attorney should have filed a pretrial motion to suppress this identification.[35]

This argument is without merit for several reasons. First, the record establishes that Wilson's trial counsel in fact filed a broad-ranging "Motion to Suppress Evidence"

---

[35]Record Doc. No. 1 (Original Brief in Support of Petition at pp. 3-5).

prior to trial.[36]  The motion asserted various constitutional grounds and was worded in terms broad enough to encompass suggestive identification evidence.  All pretrial defense motions were denied, along with a variety of pro se motions filed by Wilson himself, orally during a hearing before jury selection.[37]  Wilson's argument that his counsel declined to argue this motion or would not support Wilson's own pro se motion to this effect is not supported by the record.  Instead, the record establishes only that defense counsel withdrew his <u>separate</u> motion to suppress a confession, since Wilson had provided <u>no</u> confession and none was going to be offered at trial.[38]

Second, and more significantly, no evidence of any kind can be found in the state record that might conceivably support the argument that a "suggestive show-up identification" occurred.  On the contrary, the unrebutted testimony presented by the State at trial establishes that there was nothing "suggestive" about the identification of Wilson by the victim of the crime or the other eyewitness shortly after the burglary and upon his arrest.  At trial, Niles Guerra, one of the eyewitnesses, testified that upon hearing sounds in the parking lot from their place on the second floor inside the building and spotting a man in the victim's car, he proceeded downstairs to the parking lot and

---

[36]St. Rec. Vol. 2 of 5 at p. 53 (Motion to Suppress Evidence, 5/5/04).

[37]St. Rec. Vol. 3 of 5 at pp. 329-36.

[38]<u>Id.</u> at pp. 335-36.

saw the man who had broken into the car standing only a few feet from the car.  Guerra

testified that when the man walked quickly away from the car, he followed him in his

truck and never lost sight of the man.  He stated that within three to five minutes, a police

officer stopped that person, whom he later positively identified as Wilson.[39]  Asked what

happened at that time, Guerra testified:  "As soon as officers pulled up, I was still in my

truck.  The officers stopped, got out of their car, that's when I pulled my truck and parked

and I stepped outside too and I hollered to the officers, 'That's the man there.'  And at

that time, the officers read him his rights, put handcuffs on him, and then they took him

off to the side and started talking to him and that's when other officers came and talked

to me, and at that time I filled out a statement."[40]

There is nothing conceivably "suggestive" about this "show-up identification" in

which the witness blurted out the identification without a word of prompting, request or

suggestion from the arresting officers.  No evidence from which Wilson's identification

as the perpetrator on the scene of his arrest within a short time of the incident might

conceivably be described as "suggestive" appears anywhere in the record.  Under these

circumstances, the filing of a more specific motion to suppress a "suggestive show-up

identification" would have been frivolous.  Counsel's failure to make a frivolous motion

---

[39]St. Rec. Vol. 4 of 5 at pp. 507-14.

[40]Id. at p. 511 (emphasis added).

or otherwise take some baseless action is not deficient performance falling below an objective level of reasonableness. <u>Green v. Johnson</u>, 160 F.3d 1029, 1037 (5th Cir. 1998); <u>Carty v. Quarterman</u>, 345 F. App'x 897, 905 (5th Cir. 2009); <u>Turner v. Quarterman</u>, 481 F.3d 292, 298 (5th Cir. 2007).

For similar reasons, the claim asserted in Wilson's supplemental filings, that counsel's failure to challenge the old 1996 guilty plea as a ground for enhancement of his sentence was deficient performance, is also baseless.  As discussed above, by the time of Wilson's sentencing in 2005 on the burglary conviction for which he is currently incarcerated, his 1996 guilty plea was "regarded as conclusively valid."  <u>Lackawanna</u>, 534 U.S. at 403-04. As noted above, if counsel had failed to make this clearly groundless objection, his performance would <u>not</u> have been constitutionally deficient.  Nevertheless, the state record is clear that on July 8, 2005, Wilson's counsel in fact filed a motion to quash the multiple offender bill against him, asserting a variety of grounds, including that his guilty plea in old Case No. 193586 had been unconstitutionally obtained.[41]

Wilson's second claim in his original petition, that his counsel failed to challenge through cross-examination alleged inconsistencies concerning the perpetrator's description, similarly fails to establish grounds for federal habeas corpus relief.  First, the descriptions of the perpetrator provided by the two eyewitnesses at trial, Clark and

---

[41]St. Rec. Vol. 3 of 5 at pp. 265-66, Motion to Quash Multiple Offender Bill, 7/8/05.

33

Guerra, were substantially consistent.  I have thoroughly reviewed their trial testimony and have located only one minor inconsistency: on cross-examination Clark described the flannel jacket being worn by the perpetrator as "green and maroon possibly,"[42] while Guerra described the flannel jacket as "green, a little purple in it and some gold."[43]  In all other significant respects, including facial appearance, complexion, hat, and blue jeans, their descriptions were similar, almost identical.  More importantly, both witnesses were entirely certain both at trial and on the arrest scene in positively identifying Wilson as the man they saw near Clark's car in the parking lot when the burglary occurred and whom Guerra followed and never lost sight of on the night of the incident.  Thus, the decisions concerning purported inconsistent identifications argued by Wilson[44] are inapposite because no inconsistent pretrial and trial identifications occurred in his case.  As a tactical or strategic matter at trial, further questioning concerning inconsistencies in witness descriptions of the perpetrator would <u>not</u> have been a fertile  ground for more effective  cross-examination.   See <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6 (2003) ("[C]ounsel has wide latitude in deciding how best to represent a client.").

---

[42]St. Rec. Vol. 4 of 5 at p. 499.

[43]<u>Id.</u> at p. 515.

[44]Record Doc. No. 1 (Original Brief in Support of Petition at pp. 6-7).

Second, any suggestion that defense counsel was not thorough in his cross-examination concerning witness identification of Wilson as the perpetrator is not supported by the record. On the contrary, defense counsel thoroughly cross-examined the prosecution witnesses in an attempt to discredit their identification of Wilson as the perpetrator. On cross-examination, it was defense counsel whose questioning elicited from the prosecution witnesses that the incident occurred at night in a less than brilliantly illuminated parking lot; that there was some distance between the witnesses and the perpetrator, especially when they first saw him from their second floor window; and that they had been drinking beer before spotting the perpetrator.  Defense counsel also thoroughly examined the arresting police officer witness concerning his failure to take fingerprints, his reliance on the witnesses' positive identification of Wilson as the perpetrator to make the arrest, and arguable problems with eyewitness identifications generally. Counsel also reiterated through his questioning what the witnesses had said on direct examination; that they did not see the perpetrator's face when they first spotted him in the car from a second floor window after hearing noises in the ground floor parking lot.  In short, defense counsel thoroughly cross-examined the witnesses

concerning their identification of Wilson as the perpetrator, all in an effort to raise reasonable doubt about Wilson's guilt in jurors' minds.[45]

In this regard, defense counsel's strategy in thoroughly cross-examining the prosecution witnesses concerning their identification of Wilson as the perpetrator was consistent with a defense strategy struck in defense counsel's opening statement to the jury, in which he vigorously argued: "After having considered the probabilities or improbabilities, . . . , concerning the identification of the defendant and you are not satisfied beyond a reasonable doubt that . . . the defendant has been properly and correctly identified as the person who committed the offense charged, it will be your duty to find the defendant not guilty. In other words, the identification of the defendant as the person committing the offense must be proved to your entire satisfaction and beyond all reasonable doubt before you would be justified in finding him guilty. That's what this case is all about is whether or not Mr. Wilson was properly identified as the perpetrator of this crime."[46]

The fact that the jury did not ultimately accept counsel's argument and instead credited the witness identifications of Wilson as the perpetrator does not render counsel's performance in attempting to convince them to do so constitutionally deficient. The fact

---

[45]Defense counsel's cross-examination of Clark is St. Rec. Vol. 4 of 5 at pp. 492-505; of Guerra id. at pp. 514-25; and of Officer Ohler id. at pp. 530-44.

[46]St. Rec. Vol. 4 of 5 at p. 483.

that a defense was not successful does not stand alone to establish deficient performance. Martinez v. Dretke, 99 Fed. App'x. 538, 543 (5th Cir. 2004). "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).

Wilson's third argument, that his counsel was constitutionally ineffective for failing to assert "Wilson's long-term mental history of schizophrenia that renders him incompetent to understand the proceeding against him,"[47] borders on the frivolous. The state court record is clear that well before trial, on April 1, 2004, Wilson's counsel filed an "Application for Hearing to Determine Defendant's Mental Condition."[48] The state trial court granted the application on April 7, 2004 and set the hearing on June 2, 2004.[49] The trial court's written minutes summarize pre-trial proceedings in open court concerning the sanity issue on three separate occasions. The court's minutes of March 4, 2004 reflect that Wilson's criminal case was "stayed pending Lunacy Hearing" on that date after defense counsel, in Wilson's presence, announced in open court that he intended to file an "Application for Hearing to Determine Defendant's Mental

---

[47]Record Doc. No. 1 (Petition at ¶ 12(A), p. 4).

[48]St. Rec. Vol. 2 of 5 at p. 63.

[49] Id. (Order dated April 7, 2004).

Condition."[50]  The court's minutes of June 4, 2004 again reflect that "this matter being on assignment for Lunacy Hearing, on motion of Defense, Court ordered this matter be continued to July 14, 2004."[51]  The court's minutes of July 14, 2004 state: "The defendant being present in open Court attended by his Counsel, James E. Talley and this matter being on assignment for Lunacy Hearing, the State and the Defense stipulated that if Dr. Raphael Salcedo and Dr. John Thompson were called to testify, that they would testify in compliance with their reports, the matter was submitted to the Court; whereupon Court found the defendant competent to proceed and ordered his matter assigned for Felony Jury Trial on September 20, 2004."[52]

In subsequently ruling on one of a series of pro se post-trial motions for sanity hearings or assessments of his mental condition filed by Wilson, the state court stated that Wilson's then latest motion "to evaluate defendant's sanity has also been addressed by [the state trial court] on at least one if not more than one time.  This new motion is a duplicate of ones previously denied and states no new grounds.  CCrP Art. 641 et seq. refers to the determination of whether or not defendant possesses the mental capacity to proceed because of his lack of capacity to understand the proceedings against him or to

---

[50]St. Rec. Vol. 2 of 5 at p. 5 (Trial Court Minutes, 3/4/04).

[51]Id. at p. 6 (Trial Court Minutes, 6/2/04).

[52]Id. at p. 7 (Trial Court Minutes, 7/14/04).

38

assist in his defense. Prior to trial, a sanity commission was convened and found defendant competent to stand trial."[53]

Under these circumstances, it is clear that Wilson's claim in this regard is wholly without merit. The issue of his sanity was raised pretrial by his counsel. Wilson was examined by two physicians, who found him competent. This issue was fully addressed and ruled upon by the state trial court, which was prompted to do so by defense counsel's action. Counsel's performance in this regard was wholly responsible and in no way constitutionally deficient.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that the petition of Lacal Lucky Wilson for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v.</u>

---

[53]St. Rec. Vol. 5 of 5 (Order dated December 3, 2007 at p. 3).

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[54]

        New Orleans, Louisiana, this ___29th___ day of April, 2011.

                _____

                JOSEPH C. WILKINSON, JR.

                UNITED STATES MAGISTRATE JUDGE

---

[54]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.